UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS OUDEKERK,

                              Plaintiff,

    v.                                                      9:24-CV-0113
                                                         (DNH/MJK)

DOE #1, et al.,

                              Defendants.
_____

APPEARANCES:

NICHOLAS OUDEKERK
Plaintiff, pro se
15509
Warren County Correctional Facility
1400 State Route 9
Lake George, NY 12845

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

**I. INTRODUCTION**

      Plaintiff Nicholas Oudekerk commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 4 ("IFP Application").

      By Decision and Order entered on February 29, 2024, this Court granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and

1

28 U.S.C. § 1915A(b), found that plaintiff's Eighth Amendment excessive force claims against Corrections Officers John Doe #1-5 survived sua sponte review and required a response.  Dkt. No. 7 ("February 2024 Order").

Because service could not be effectuated on the "Doe" defendants, the Court also directed the Clerk of Court to send a copy of the complaint and February 2024 Order to the New York State Attorney General's Office and requested that the New York State Attorney General's Office, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997), attempt to ascertain the full names of the "Doe" defendants.  *Id*. at 8-9.

On March 20, 2024, an Assistant Attorney General from the New York State Attorney General's Office filed a letter in an effort to assist plaintiff with identifying the "Doe" defendants.  *See* Dkt. No. 9 ("Status Report").  By Text Order filed on April 1, 2024, plaintiff was directed to review the Status Report and, to the extent he was able to do so, submit a proposed amended complaint within thirty (30) days which substitutes the named defendants in place of the "Doe" defendants, and makes any other corrections necessary.  *See* Dkt. No. 10.

Presently under consideration is plaintiff's amended complaint.  Dkt. No. 11 ("Am. Compl").

## II. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. The Complaint and February 2024 Order

In his original complaint, plaintiff alleged that on October 30, 2022, he was assaulted by five "Doe" corrections officers inside the "medical building" of Mid-State Correctional Facility, resulting in "brain tromma [sic]". Compl. at 4-5. The complaint was construed to assert Eighth Amendment excessive force claims against each defendant. *See* February 2024 Order at 5.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Eighth Amendment claims survived sua sponte review. *Id*. at 6-11.

### B. Review of the Amended Complaint

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the February 2024 Order and it will not be restated in this Decision and Order. *See* February 2024 Order at 2-4.

Plaintiff's amended complaint asserts claims based on alleged events that occurred on October 30, 2022, and includes additional allegations of wrongdoing, presumably based on the Status Report filed by the New York State Attorney General's Office. *See generally*, Am. Compl. The amended complaint names the following officials as defendants in place of the "Doe" defendants: (1) Corrections Officer Wanninger; (2) Corrections Officer Pekala; (3)

3

Corrections Sergeant Congleton; and (4) Deputy Superintendent Burns.  The following facts are set forth as alleged in the amended complaint.

On October 30, 2022, defendants Wanninger and Pekala "assalted [sic] [plaintiff] by punching [and] kicking [him] in [his] face while [he] was already on medical watch in the medical building[.]"  Am. Compl. at 5.  After assaulting plaintiff, these officials tied a sheet around his neck and "dragged [him] around the room[,]" subsequently informing medical staff that he attempted to kill himself.  Id.  At some point, defendant Congleton arrived at the scene but "instead [sic] of doing something about the assalt [sic] . . . told [plaintiff that he] was not assalted [sic]."  Id. at 8, 11.

Following the use-of-force incident, plaintiff was transported by ambulance to an outside hospital for evaluation.  Am. Compl. at 5.  Two days later, plaintiff was brought back to the hospital after he "past [sic] out" and fell.  Id. at 7.

Roughly six years earlier, plaintiff was "removed" from Mid-State Correctional Facility based on his involvement in an "incedent [sic]" with other corrections officials.  Am. Compl. at 9.  Plaintiff believes that he should not have been returned to Mid-State Correctional Facility in 2022, and that his injuries would never have happened if defendant Burns "alerted someone that [plaintiff] shouldn't be" at Mid-State Correctional Facility.  Id. at 10.

The Court liberally construes the allegations in the amended complaint to assert the following Section 1983 claims: (1) Eighth Amendment excessive force claims against defendants Wanninger and Pekala; (2) Eighth Amendment failure-to-protect claims against

4

defendants Congleton and Burns; and (3) Section 1983 conspiracy claims against defendants Wanninger, Pekala, and Congleton.[1]

Plaintiff seeks money damages. Am. Compl. at 23. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C. Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

---

[1] The amended complaint also asserts "supervisory liability" claims against defendants Congleton and Burns based on their alleged wrongdoing. The Second Circuit, however, recently made clear that "there is no special rule for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). Instead, "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Thus, in the context of an Eighth Amendment claim against a supervisory official, for example, a plaintiff must establish that the supervisory official himself "acted with deliberate indifference—meaning that [the official] personally knew of and disregarded an excessive risk to [the plaintiff's] health or safety." *Id*. at 619 (internal quotation marks and citation omitted). Accordingly, the Court does not construe the allegations in the amended complaint to assert any Section 1983 claims against defendants Congleton and Burns based on the alleged wrongdoing of defendants Wanninger and Pekala.

### 1. Eighth Amendment Excessive Force Claims

The legal standard governing an Eighth Amendment excessive force claim was discussed at length in the February 2024 Order and will not be restated. *See* February 2024 Order at 8. The allegations in the amended complaint are not materially different from the allegations in the original complaint with respect to these claims, except that plaintiff now identifies only two officials as having participated in the alleged use-of-force incident, instead of five. For the reasons set forth in the February 2024 Order, plaintiff's excessive force claims against defendants Wanninger and Pekala survive initial review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 2. Failure-to-Protect Claims

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Eighth Amendment's prohibition against cruel and unusual punishment encompasses the use of excessive force against an inmate, who must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

6

"The Eighth Amendment [also] requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Thus, prison officials may also be held liable under Section 1983 for failing to protect an inmate from conditions posing a substantial risk of serious harm.  *See Farmer*, 511 U.S. at 836.

In order to establish a "failure to protect," the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, and prison officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer*, 511 U.S. at 836.  Deliberate indifference exists when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837.

"One way to make out such a claim is to allege that 'a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant official being sued had been exposed to information concerning the risk and thus must have known about it.'" *Coronado v. Goord*, No. 99-CV-1674, 2000 WL 1372834, at *4 (S.D.N.Y. Sept. 25, 2000) (quoting *Farmer*, 511 U.S. at 842-43); *see also Hayes*, 84 F.3d at 620-21 (prisoner's repeated expressions of fear following an inmate attack and requests for transfer as a safety measure raised a question of fact).

7

"Courts have [also] found that a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted." *Davis v. Torres*, No. 10-CV-2236, 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *see also Beckles v. Bennett*, No. 05-CV-2000, 2008 WL 821827, at *17 (S.D.N.Y. Mar. 26, 2008) (denying summary judgment where plaintiff presented evidence that he informed sergeant of correction officers' threatening behavior and was later assaulted by those officers).

"On the other hand, an inmate's communications about 'generalized safety concerns' or 'vague concerns of future assault by unknown individuals' are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Stephens v. Venettozzi*, No. 13-CV-5779, 2016 WL 929268, at *19 (S.D.N.Y. Feb. 24, 2016) (quoting *Ross v. City of New York*, No. 12-CV-8545, 2014 WL 3844783, at *8 (S.D.N.Y. 2014), *rev'd on other grounds*, No. 14-3327 (2d Cir. July 20, 2015) (summary order)), *report and recommendation adopted sub nom. Stephens v. Venetozzi*, 2016 WL 1047388 (S.D.N.Y. Mar. 10, 2016).

"Neither mere negligence nor a prison guard's mere failure to act reasonably is enough to state an Eighth Amendment deliberate indifference claim." *Sawyer v. New York State Dept. of Corr. Servs.*, No. 11-CV-0152, 2015 WL 6644112, at *7 (W.D.N.Y. June 30, 2015) (citing *Garcia v. Witkowski*, 988 F. Supp. 2d 360, 361 (W.D.N.Y. 2013)), *report and recommendation adopted in pertinent part by* 2015 WL 6641471 (W.D.N.Y. Oct. 28, 2015);

*Shell v. Brun*, 585 F. Supp. 2d 465, 469-70 (W.D.N.Y. 2008) ("In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough . . . .").

With respect to defendant Congleton, the amended complaint vaguely alleges that this official arrived at the medical area where plaintiff was involved in a use-of-force incident with defendants Wanninger and Pekala, but "instead [sic] of doing something about the assalt [sic] . . . told [plaintiff that he] was not assalted [sic]." Am. Compl. at 8, 11. It is entirely unclear from these allegations what defendant Congleton witnessed when arrived at the scene, or whether the alleged assault was ongoing at the time.

Thus, the Court is unable to plausibly infer from the allegations in the amended complaint that defendant Congleton had a realistic opportunity to prevent some amount of harm from occurring, yet failed to do so. *See Hall v. Nickols*, No. 21-CV-0502 (TJM/ML), 2021 WL 2457638, at *4 (N.D.N.Y. June 16, 2021) ("Because the complaint fails to allege that defendants Nickols and Doe 1 had a realistic opportunity to intervene in the assault on plaintiff, the failure to intervene claims asserted against them are dismissed pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted."); *Zimmerman v. Macomber*, No. 95-CV-0882, 2001 WL 946383, at * 6 (S.D.N.Y. Aug. 21, 2001) (holding that, where officer did not have knowledge of substantial risk to inmate's safety, "his failure to station himself at the officer's desk does not raise a constitutional question").

In addition, the amended complaint does not include any allegations which plausibly suggest that plaintiff had a negative history with either defendant Wanninger or defendant Pekala, or that defendant Congleton otherwise knew or should have known that plaintiff faced a serious risk of harm from these officials prior to the alleged assault. Thus, the Court also has no basis to plausibly infer that defendant Congleton acted with deliberate indifference to plaintiff's health or safety by failing to take steps to prevent the alleged assault from occurring.

Furthermore, with respect to defendant Burns, the amended complaint only generically alleges that this official should have "alerted someone that [plaintiff] shouldn't be" at Mid-State Correctional Facility based on his involvement in an "incedent [sic]" with other corrections officials roughly six years earlier. Am. Compl. at 9-10.

Setting aside the conclusory nature of these allegations, the amended complaint lacks allegations which plausibly suggest that (1) either defendant Wanninger or defendant Pekala were among the officials involved in the alleged incident with plaintiff six years earlier, or (2) plaintiff expressed concerns for his safety, or requested a transfer or placement in protective custody, upon arriving at Mid-State Correctional Facility.

Thus, the Court has no basis to plausibly infer from the allegations in the amended complaint that defendant Burns knew or should have known, prior to the alleged assault on October 30, 2022, that plaintiff faced a specific risk of serious harm at the hands of defendants Wanninger and Pekala, yet failed to take any corrective measures.

Finally, the law is well-settled that a corrections official cannot be held liable for failing to remedy harm that has already occurred. *See Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) (noting that a "failure to remedy" theory of liability is not available against a supervisor with respect to discrete and completed violations); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) ("[T]he wrong must have been ongoing or otherwise capable of mitigation at the time the supervisory official was apprised thereof."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation.").

In light of the foregoing, plaintiff's failure-to-protect claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3. Conspiracy Claims

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Rasheen v. Adner*, 356 F. Supp. 3d 222, 235 (N.D.N.Y. 2019). To state a conspiracy claim, plaintiff "must provide some factual basis supporting a meeting of the minds." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003).

Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see*

*also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). Thus, a plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).

     As a threshold matter, a conspiracy claim requires an underlying constitutional violation. *See Clark v. City of Oswego*, No. 03-CV-202 (NAM/DEP), 2007 WL 925724, at *7 (N.D.N.Y. Mar. 26, 2007) ("A plaintiff asserting a Section 1983 conspiracy claim must first prove a violation of the underlying constitutional right, . . ., or in other words, a civil conspiracy claim do[es] not set forth an independent cause of action but rather is sustainable only after an underlying tort claim has been established[.]" (internal quotation marks and citations omitted)); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009), *as amended* (Oct. 7, 2009) ("Because neither of the underlying section 1983 causes of action can be established, the claim for conspiracy also fails."); *DeStefano v. Duncanson*, No. 08-CV-3419, 2011 WL 651452, at *4 (S.D.N.Y. Feb. 10, 2011) ("A Section 1983 conspiracy claim against private individuals will stand 'only insofar as the plaintiff can prove the sine qua non of a § 1983 action: the violation of a federal right.'" (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

In this case, the only underlying claim that remains in this action is plaintiff's excessive force claim against defendants Wanninger and Pekala. The amended complaint lacks allegations which plausibly suggest that these officials formed an agreement, either with each other or defendants Congleton or Burns, to subject plaintiff to excessive force before doing so.

Moreover, "[a] claim that a prison employee has taken steps to conceal evidence of a past constitutional violation which is not ongoing does not alone state a cognizable constitutional claim under 42 U.S.C. § 1983." *De Ponceau v. Bruner*, No. 9:09-CV-0605 (GTS/DEP), 2012 WL 1030415, at *7 (N.D.N.Y. Feb. 21, 2012) (collecting cases), *report and recommendation adopted by* 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012); *Evans v. Murphy*, No. 12-CV-365, 2013 WL 2250709, at *3 (W.D.N.Y. May 22, 2013) (dismissing claim that defendant "failed to document [plaintiff's] injuries to cover-up the incident[,]" noting that "[s]uch a claim does not state a constitutional claim"); *Lewis v. Hanson*, No. 9:18-CV-0012 (LEK/DJS), 2022 WL 991729, at *25 (N.D.N.Y. Mar. 31, 2022) (holding, in light of *Tangreti*, that "an officer who attempts to cover up an assault after the fact, while potentially committing other violations, may not have personally participated in cruel and unusual punishment in the same way such that a plaintiff could establish the elements of an excessive force claim against them directly").

An exception to this general rule may exist when an alleged cover-up "has made it impossible for the plaintiff to litigate an underlying claim, because material evidence was destroyed, for instance, or because the statute of limitations expired before the plaintiff

discovered the cover-up."  *Tavares v. New York City Health & Hosps. Corp.*, No. 13-CV-3148, 2015 WL 158863, at *7 (S.D.N.Y. Jan. 13, 2015) (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14 & n.11 (2002) (describing these claims as "backward-looking access claims")).  "The Second Circuit has emphasized, however, that '[t]he viability of [such] claims is far from clear,' pointing out that the *Harbury* decision was careful not to endorse their validity."  *Tavares*, 2015 WL 158863, at *7 (quoting *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012)).

Even assuming backward-looking access claims are actionable, "such claims are available only if a judicial remedy was 'completely foreclosed' by the alleged cover-up."  *Sousa*, 702 F.3d at 128 (quoting *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006)).  In this case, the amended complaint fails to allege facts which plausibly suggest that a judicial remedy for the alleged use of excessive force against plaintiff was "completely foreclosed" as a result of actions taken by any of the named defendants following the incident.

In light of the foregoing, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. **CONCLUSION**

Therefore, it is

ORDERED that

1.  The amended complaint (Dkt. No. 11) is accepted for filing and will supersede and replace the original complaint as the operative pleading;

2. The Clerk shall add Corrections Officer Wanninger, Corrections Officer Pekala, Corrections Sergeant Congleton, and Deputy Superintendent Burns to the docket as defendants;

3. The Clerk shall **TERMINATE** Corrections Officers John Doe #1-5 as defendants in this case;

4. Plaintiff's Eighth Amendment excessive force claims against defendants Wanninger and Pekala **SURVIVE sua sponte review** and require a response;

5. All remaining Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted, as set forth above;

6. The Clerk shall **TERMINATE** defendants Congleton and Burns from this action;

7. The Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon the defendants Wanninger and Pekala. The Clerk shall also forward a copy of the summons and amended complaint by electronic mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

8. Upon the completion of service, a response to plaintiff's amended complaint be filed by defendants Wanninger and Pekala, or their counsel, as provided for in the Federal Rules of Civil Procedure;

9. All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District

Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

10. Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action;

11. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

12. Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and

13. The Clerk serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

Dated:  June 4, 2024
        Utica, New York.

David N. Hurd
U.S. District Judge